# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EARL THEO SYKES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. CIV-13-1060-M ) |
| CITY OF OKLAHOMA CITY, et al., | ) ) ) |
| Defendants. | ) |

## **ORDER**

This case is scheduled for trial on the Court's April 2015 trial docket.

Before the Court is defendants Oklahoma City Police Lieutenant D. Gulikers ("Lieutenant Gulikers"), Oklahoma City Police Detective J. Husted ("Detective Husted"), and Oklahoma City Police Officer R. Story's (" Officer Story") (collectively, "Defendant Officers") Motion for Summary Judgment, filed September 2, 2014. On September 17, 2014, plaintiff filed his response, and on September 24, 2014, Defendant Officers filed their reply. Also before the Court is defendant Chief William Citty's ("Citty") Motion for Summary Judgment, filed January 29, 2015. On February 4, 2015, plaintiff filed his response, and on February 9, 2015, Citty filed his reply. Finally, before the Court is defendant City of Oklahoma City's ("City") Motion for Summary Judgment, filed January 29, 2015. On February 4, 2015, plaintiff filed his response, and on February 9, 2015, City filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.  Introduction[1]

In 2011 and early 2012, plaintiff was involved in a volatile domestic relationship with Oklahoma City Police Officer Sherrica King ("King"). This relationship resulted in several "domestic related calls" to the police from King's address. On December 7, 2011, King filed for and received an emergency protective order. On December 19, 2011, a final protective order ("VPO") was entered.

On December 25, 2011, King's daughter called 911 and reported plaintiff had assaulted King at King's home. On January 3, 2012, at approximately 11:10 a.m., Officer Story was assigned to respond to a 911 call from King. King reported that plaintiff had forcibly pulled open her screen door and entered her residence. She ran out through the garage and called 911. Plaintiff had left the residence by the time Officer Story arrived, but Officer Story made a report and issued a radiogram seeking the apprehension of plaintiff for burglary and violation of the VPO. King called 911 again at 12:50 p.m. and reported that plaintiff had again entered her residence and left. Plaintiff was located and arrested a few blocks away for burglary and violation of the VPO. On January 5, 2012, a probable cause hearing was held before Judge Hall of the District Court of Oklahoma County. Judge Hall found probable cause existed to hold plaintiff for burglary and violation of the VPO.

On March 8, 2012, Detective Husted prepared an affidavit setting forth the facts that led him to conclude that on December 25, 2011, plaintiff had committed the crimes of domestic violence

---

[1] The facts contained in this introduction are based upon the statement of material facts contained in Defendant Officers' Motion for Summary Judgment. In his response, plaintiff does not specifically controvert any of Defendant Officers' facts. Pursuant to Local Civil Rule 56.1(c), the Court will deem admitted all of the material facts set forth in Defendant Officers' statement of material facts.

after a former conviction and possession of a firearm after former conviction of a felony. This affidavit specifically included the information that King was a police officer and that the domestic violence was observed and reported by King's daughter, rather than King. On April 24, 2012, the District Attorney's Office filed an information charging plaintiff with domestic violence on December 25, 2011, burglary on January 3, 2012, and violation of a protective order on January 3, 2012. The District Attorney's Office declined to file a charge based on possession of a firearm after former conviction of a felony. On April 26, 2012, Judge Hall issued an arrest warrant for plaintiff.

On October 2, 2012, the charges against plaintiff were dismissed without prejudice to refiling. The basis for the dismissal was King's assertion of the Fifth Amendment. On October 4, 2013, plaintiff filed the instant Section 1983 action alleging violations of his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Defendant Officers, Citty, and City now move for summary judgment.

## II. Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden

3

of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.   Discussion

   A.   Defendant Officers

      1.   Officer Story

Plaintiff asserts that Officer Story violated plaintiff's constitutional rights by arresting him without a warrant and without probable cause. Officer Story contends that he is entitled to qualified immunity on this claim.

> To reach the question whether a defendant . . . is entitled to qualified immunity, a court must first ascertain whether the plaintiff has sufficiently asserted the violation of a constitutional right at all. This requires the district court to first determine whether plaintiff's allegations, if true, state a claim for a violation of a constitutional right that was clearly established when defendant acted.

*Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995) (internal quotations and citations omitted).

The constitutionality of a warrantless arrest should be analyzed under the probable cause standard. *See id.* at 1476.

> A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime. Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense. When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff. Even

4

> law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.

*Id.* (internal quotations and citation omitted). Additionally, "[t]he constitutionality of an arrest does not depend on the arresting officer's state of mind. . . . All that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest [plaintiff] on *some* ground." *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) (emphasis in original). Finally, under Oklahoma law,

> a peace officer, without a warrant, shall arrest and take into custody a person if the peace officer has reasonable cause to believe that:
> 1. An emergency ex parte or final protective order has been issued and served upon the person, pursuant to the Protection from Domestic Abuse Act;
> 2. A true copy and proof of service of the order has been filed with the law enforcement agency having jurisdiction of the area in which the plaintiff or any family or household member named in the order resides or a certified copy of the order and proof of service is presented to the peace officer as provided in subsection D of this section;
> 3. The person named in the order has received notice of the order and has had a reasonable time to comply with such order; and
> 4. The person named in the order has violated the order or is then acting in violation of the order.

Okla. Stat. tit. 22, § 60.9(A).[2]

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds plaintiff has not presented sufficient evidence to create a genuine issue of material fact as to whether Officer Story violated his constitutional rights. Specifically, the

---

[2]Further, Okla. Stat. tit. 22, § 196(7) provides: "[a] peace officer may, without a warrant, arrest a person: . . . (7) When a peace officer, in accordance with the provisions of Section 60.9 of this title, is acting on a violation of a protective order offense; . . . ."

5

Court finds plaintiff has not submitted sufficient evidence to create a genuine dispute as to whether Officer Story had probable cause to arrest plaintiff. Based upon the evidence presented, the Court finds that Officer Story had reasonably trustworthy information sufficient to lead a prudent person to believe that plaintiff had committed a burglary and had violated a protective order. King reported that plaintiff had come to her residence, in violation of a protective order, and forcibly pulled a locked storm door open, and less than two hours later further reported plaintiff had entered her house again. Officer Story was entitled to rely on the information provided by the victim. Further, Officer Story confirmed the existence of a protective order. Accordingly, the Court finds that Officer Story is entitled to qualified immunity.

### 2. Detective Husted

Plaintiff asserts that Detective Husted violated plaintiff's constitutional rights based upon the probable cause affidavit that Detective Husted authored. Detective Husted contends that he is entitled to qualified immunity.

> Arrest warrant affiants violate the Fourth Amendment when they knowingly . . . , or with reckless disregard for the truth, include false statements in the affidavit, or knowingly or recklessly omit from an arrest affidavit information which, if included, would have vitiated probable cause. . . . In some cases, [r]ecklessness may be inferred from omission of facts which are clearly critical to a finding of probable cause. However, [a]llegations of negligence or innocent mistake are insufficient.

*Bruner v. Baker*, 506 F.3d 1021, 1026-27 (10th Cir. 2007) (internal quotations and citations omitted). Further,

> [i]f an arrest warrant affidavit contains false statements, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit. Where information has been omitted from an affidavit, we determine the existence of probable cause by examining the affidavit as if the

6

> omitted information had been included and inquiring if the affidavit
> would still have given rise to probable cause for the warrant.

*Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (internal quotations and citations omitted).

Having reviewed the parties' submissions, as well as plaintiff's complaints filed in this case, the Court finds it appears the information plaintiff believes was improperly omitted from the probable cause affidavit is that King was under investigation for making a false report of violation of a protective order and that Detective Husted was investigating both cases. Having carefully examined the affidavit as if the omitted information had been included, the Court finds that the affidavit would still have given rise to probable cause. Specifically, the Court finds that the probable cause affidavit prepared by Detective Husted addresses only the events of December 25, 2011 and does not purport to offer any evidence that plaintiff was violating the protective order on that date. Further, King's status as a police officer is discussed. Additionally, and perhaps most importantly, the basis for the domestic violence charge set forth in the affidavit is the information provided by King's daughter, the witness to the attack, not King. Finally, the Court finds that plaintiff has presented no evidence which even suggests that Detective Husted omitted any facts, knowingly or with reckless disregard for the truth, rather than out of negligence or inadvertence. Therefore, the Court finds Detective Husted did not violate plaintiff's constitutional rights based upon the probable cause affidavit that Detective Husted authored. Accordingly, the Court finds that Detective Husted is entitled to qualified immunity.

### 3. Lieutenant Gulikers

Plaintiff asserts that Lieutenant Gulikers instituted a malicious prosecution of him. Lieutenant Gulikers contends that he is entitled to qualified immunity. "To establish a malicious prosecution claim under § 1983, a plaintiff must prove that the defendant initiated or continued a

proceeding against him without probable cause." *Nielander v. Bd. of Cnty. Comm'rs of the Cnty. of Republic, Kan.*, 582 F.3d 1155, 1164 (10th Cir. 2009). As set forth above, the Court has found there was probable cause to arrest plaintiff and Detective Husted's affidavit would still have established probable cause. Accordingly, the Court finds that plaintiff has failed to establish his claim of malicious prosecution and that Lieutenant Gulikers is entitled to summary judgment.

### 4. Conspiracy

Finally, plaintiff asserts that Defendant Officers conspired to deprive plaintiff of his constitutional rights. In order to succeed on a conspiracy claim, a plaintiff must prove both the existence of a conspiracy and the deprivation of a constitutional right. *See Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995). As set forth above, the Court has found no violation of plaintiff's constitutional rights. Accordingly, the Court finds Defendant Officers are entitled to summary judgment as to this claim.

### B. City and Citty

A municipality may not be held liable on a constitutional claim, regardless of what its policies authorize, if its employee did not commit a constitutional violation. *City of L.A. v. Heller*, 475 U.S. 796, 798-99 (1986).[3] As set forth above, the Court has already determined that Defendant Officers did not commit a constitutional violation. Thus, the Court finds that City and Citty can not be held liable. Accordingly, the Court finds that City and Citty are entitled to summary judgment.

---

[3]Plaintiff is suing Citty in his official capacity. Therefore, his liability is the same as the City's.

IV.     Conclusion

For the reasons set forth above, the Court GRANTS Defendant Officers' Motion for Summary Judgment [docket no. 90], GRANTS Citty's Motion for Summary Judgment [docket no. 155], and GRANTS City's Motion for Summary Judgment [docket no. 154].

**IT IS SO ORDERED this 5th day of March, 2015.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE